# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs July 13, 2010

## JAMES PATTERSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 04-01140    W. Mark Ward, Judge**

**No. W2009-01874-CCA-R3-PC  - Filed February 17, 2011**

The petitioner, James Patterson, appeals from the denial of post-conviction relief by the Criminal Court of Shelby County.  He was convicted[1] of especially aggravated robbery, a Class A felony, criminal attempt to commit second degree murder, a Class B felony, and two counts of especially aggravated kidnapping,[2] Class A felonies.  The petitioner received an effective sentence of thirty-two years.  The convictions and sentence were upheld on direct appeal.  See State v. James Patterson, No. W2005-01416-CCA-R3CD, 2007 WL 162175, at *1 (Tenn. Crim. App., at Jackson, Jan. 23, 2007).  The petitioner subsequently filed a petition for post-conviction relief, which alleged that trial counsel was ineffective.  The post-conviction court denied the petitioner relief.  On appeal, the petitioner claims he is entitled to a new post-conviction hearing because post-conviction counsel failed to diligently investigate and present reasonable claims for relief.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Neil Umsted (on appeal), Memphis, Tennessee, and Janis H. Benson (at hearing), Memphis, Tennessee, for the Petitioner-Appellant, James Patterson.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tom Hoover, Assistant District Attorney General, for the Appellee, State of Tennessee.

---

[1]The record does not include copies of the judgment forms.  This information is based on this court's opinion on direct appeal.  See State v. James Patterson, No. W2005-01416-CCA-R3CD, 2007 WL 162175, at *1 (Tenn. Crim. App., at Jackson, Jan. 23, 2007).

[2]The trial court merged the convictions for especially aggravated kidnapping.

# OPINION

**Background**. The facts of the underlying convictions, as outlined by this court in the petitioner's direct appeal, are described below:

David Hall, the victim, testified that he went to William "Mack" Dean's house at approximately 6:00 p.m. on December 24, 2003. The victim stated that the defendant was present at Dean's house when he arrived. The victim started to leave but was stopped by the defendant who struck him and began trying to subdue him. The defendant and Dean placed handcuffs on the victim, and the defendant pulled a knitted skull cap over the victim's face. This restricted but did not completely obscure the victim's vision. The car that the victim had driven was backed to Dean's front door. The defendant attempted to force the victim into the trunk of the car. The victim's legs were hanging out of the trunk and were kicking in resistance. The defendant began slamming the trunk lid on the defendant's legs and threatened to cut them off. The victim managed to escape from the trunk but fell on the ground. The defendant then started striking the victim's head with a pipe. After four or five blows, the victim agreed to cooperate. The defendant and Dean pulled the victim from the ground, and he began resisting again. The defendant struck the victim with the pipe several more times and then was handed a pistol by Dean. The defendant placed the gun to the victim's head and said, "[D]on't make me kill you out here." The victim briefly lost consciousness and awoke as the trunk lid was closed. The defendant demanded that the victim obtain money. The victim asked to be released to obtain the money, but the defendant refused. The victim was transported in the trunk a short distance from Dean's house. The victim was able to remove the skull cap and to open the trunk lid. The trunk lid was shut again, and the defendant was informed of the victim's movements. The defendant then took the victim into the defendant's house. The victim was taken to the back of the house and placed on the floor. The defendant sat on the victim's mid-section, applied a lit cigar to the victim's eyes, and sprayed bleach in the victim's eyes. This was done repeatedly, according to the victim.

The victim said that during the struggle, his clothes had been removed and he was wearing only boxer shorts and a T-shirt. The defendant removed the handcuffs but placed duct tape around the victim's eyes, arms, and legs from the ankles over the knees. The victim was again placed in the trunk where he lost consciousness. The victim recalled the vehicle stopping and recalled being dragged into a wooded area. The victim was left there for a

-2-

period he described as a "long, long time in the woods." The victim was unable to walk but began rolling toward the sound of traffic. He eventually rolled into a ditch and at approximately 9:30 a.m. on December 25, was seen by a passing motorist who reported the sighting to police. The victim stated that his hands and feet were frozen. The victim required stitches to gashes on his head and wounds on his feet. His kidneys ceased to function; his eyes required treatment and suffered residual damage. He remained in the hospital until January 8, 2004. The victim stated that approximately $175 was taken from him and that the vehicle, which belonged to his fiancé, was not recovered. The victim identified the defendant from a photo spread shown to him on January 3, 2004. At that time he only knew the defendant as "Blaze."

William "Mack" Dean's testimony substantially confirmed the victim's account of the abduction. Dean recounted that after the victim came to purchase marijuana on December 24, the defendant attacked the victim, handcuffed him, and placed a skull cap over his face. Dean stated that after much struggling and after the defendant struck the victim repeatedly with a crowbar, the victim was temporarily secured in the trunk. Dean drove the car around the corner to the defendant's house while the defendant sat on the trunk. The defendant called Jerry Pulliam, who came to the scene. At the defendant's request, Pulliam went to a store and bought duct tape. Dean and Pulliam left the scene about twenty minutes after Pulliam returned with the duct tape. Dean was not a witness to subsequent events described by the victim.

Jerry Pulliam testified that he was called by the defendant to come to the defendant's house on December 24. On Pulliam's arrival, the victim was still in the trunk of the car parked in the field at the defendant's home. Pulliam acquired duct tape for the defendant and left for home shortly after delivering it. Pulliam stated that he only got a glance of the defendant in the trunk.

Sergeant James Grigsby of the Memphis Police Department, the lead investigator on this case, could not interview the victim until January 3, 2004, due to the victim being unconscious and on a ventilator. Sergeant Grigsby executed a search warrant at the defendant's home and found a bottle of bleach and rolls of duct tape on the washing machine.

Agent Donna Nelson, a forensic specialist with the Tennessee Bureau of Investigation (TBI), testified that a blood sample taken from the defendant's door was conclusively shown by DNA tests to be that of the victim.

The defendant testified that he did not live at the residence where the duct tape, bleach, and victim's blood were found. He further stated that he "lounged" most of December 24, until his girlfriend picked him up at 5:00 p.m. They dined at a restaurant and then spent the night in a motel.

Melanie Roach, the defendant's girlfriend, testified that she spent the evening of December 24, 2003, with the defendant at a restaurant and, later, at a motel.

James Patterson, 2007 WL 162175, at *1-3.

Following the direct appeal, the petitioner filed a pro se petition for post-conviction relief. The petition raised numerous claims based on ineffective assistance of counsel. Specifically, it argued that trial counsel failed to: (1) adequately investigate the case; (2) argue mistaken identity as a defense; (3) suppress evidence discovered during the search of the petitioner's home; (4) suppress evidence related to the victim's identification of the petitioner from a photo lineup; and (5) sufficiently cross-examine the State's witnesses. The petitioner was subsequently appointed counsel and an amended petition was filed. The amended petition raised many of the same issues included in the pro se petition. It also asserted that trial counsel should have filed a motion to suppress evidence of Dean's identification of the petitioner from a photo lineup.

**Post-Conviction Hearing**. The first witness to testify at the hearing was Lieutenant Jasper Clay of the Memphis Police Department. He and Sergeant David Ayers took a statement from Dean. Lieutenant Clay explained that Dean gave an initial statement to the police; however, he later sought to amend this statement. Lieutenant Clay and Sergeant Ayers were responsible for taking the second statement. Dean stated that someone named T.J. was present during the attack. T.J. was not the petitioner. Lieuitenant Clay testified that Dean was shown a photo lineup from which he identified T.J. Lieuitenant Clay could not recall any additional information about T.J.

Sergeant Ayers testified that he assisted in taking the second statement from Dean. He said Dean provided information about someone named T.J. This information was used to search the Mugshot Archives of the Memphis Police Department. Sergeant Ayers said the search produced a picture of Terrance Jordan. Dean identified Terrance Jordan as the individual he previously referred to as T.J. Sergeant Ayers could not recall any additional information about T.J.

Sergeant James Grigsby of the Memphis Police Department testified that he was the lead investigator on this case. He took the first statement given by Dean. According to Sergeant Grigsby, Dean stated that someone named Blaze was involved in the attack. Dean

-4-

did not know Blaze by any other name. Using the computer database, Sergeant Grigsby determined that Blaze was a nickname for the petitioner. Sergeant Grigsby was unsure how he obtained the petitioner's name through the database. The database produced a picture of the petitioner. This picture was shown to Dean as part of a photo lineup. Sergeant Grigsby said Dean identified the petitioner as the culprit.

Trial counsel testified that he discussed every aspect of the case with the petitioner, including how the petitioner was identified as a suspect. Trial counsel did not see any grounds for suppressing evidence related to the photo lineup. He reasoned that the petitioner knew Dean before the attack. Trial counsel did not file a motion to suppress in this case. He said he shared all of the discovery material with the petitioner. Trial counsel believed that the State had a "very strong case."

The petitioner testified that trial counsel admitted to making some mistakes. He did not specify what those mistakes were. The petitioner said he was not given all of the discovery material. He claimed that after he was imprisoned, his family retrieved papers from Shelby County that were not in the discovery packet. The petitioner denied that he used Blaze as an alias. He believed trial counsel should have questioned Sergeant Grigsby about how he came up with the petitioner's name as a suspect. The petitioner asserted that trial counsel should have suppressed evidence of Dean's identification of the petitioner. He wished trial counsel had questioned his co-defendants about what clothes the petitioner wore during the attack. The petitioner acknowledged that he knew the co-defendants before the attack. He wished trial counsel had subpoenaed the officers who first contacted the victim after the offenses occurred. He believed those officers could have recounted exculpatory statements from the victim. The post-conviction court asked the petitioner if he refused to see post-conviction counsel on the day before the hearing. The petitioner said he was not aware that counsel visited him. The post-conviction counsel said she tried to meet with the petitioner in prison; however, she was told by a prison officer that the petitioner refused to see her.

At the close of the post-conviction hearing, the petitioner told the court that he did not receive a fair hearing. He did not specify why the hearing was unfair. The post-conviction court found that the petitioner had refused to see his attorney on the day before the hearing. The court also stated that the petitioner met with his attorney on numerous occasions and that they had a disagreement about the proper issues for the post-conviction petition.

The post-conviction court denied the petitioner relief by written order. The order stated the petitioner only presented evidence and argument about two of the issues included in the pro se and amended petitions. As a result, the court found that the petition's remaining issues were waived. The court addressed the claim that trial counsel should have suppressed evidence of Dean's identification of the petitioner from a photo lineup. The court found that

the petitioner had not shown that a motion to suppress would have been successful or that exclusion of the evidence would have affected the outcome of the trial. The court also considered the petitioner's related claim that trial counsel should have questioned Sergeant Grigsby about how he obtained the photo of the petitioner for the photo lineup. The court determined that the process for obtaining the photo was not particularly relevant. It concluded that the petitioner failed to prove deficient performance or prejudice. Therefore, the court denied the petition for post-conviction relief.

Following this denial, post-conviction counsel was permitted to withdraw. The petitioner was appointed new counsel. He then filed a notice of appeal.[3]

## ANALYSIS

The petitioner claims he is entitled to a new post-conviction hearing because his counsel failed to litigate reasonable claims for relief that were included in the post-conviction petition. Specifically, he argues that counsel did not comply with Rule 28 of the Tennessee Supreme Court Rules, which requires that post-conviction counsel "diligently investigate and present all reasonable claims." Tenn. Sup. Ct. R. 28, § 6(C)(2). The petitioner asserts that counsel should have pursued the following "reasonable claims": (1) whether the photo spread was unduly suggestive because the petitioner was the only individual with braided hair; and (2) whether trial counsel should have questioned the State's witnesses about prior inconsistent statements. The petitioner claims counsel wasted the entire hearing by focusing on how the police obtained his picture for the photo spread. In response, the State argues that the petitioner is not entitled to relief because a violation of Rule 28 does not warrant a new post-conviction hearing.

It is well established that a petitioner does not have a constitutional right to counsel in post-conviction proceedings. House v. State, 911 S.W.2d 705, 712 (Tenn. 1995). However, in Tennessee, this right has been mandated by statute. T.C.A. § 40-30-107(b)(1) (2007); Leslie v. State, 36 S.W.3d 34, 38 (Tenn. 2000). In Leslie, the Tennessee Supreme Court discussed the importance of the right to counsel in post-conviction proceedings: "The appointment of counsel assists in ensuring that a petitioner asserts all available grounds for relief and fully and fairly litigates these grounds in a single post-conviction proceeding." Leslie, 36 S.W.3d at 38. The duties of post-conviction counsel are set forth in Rule 28 of Tennessee Supreme Court Rules:

---

[3] We note that the petitioner's notice of appeal was filed more than thirty days after entry of the order denying post-conviction relief. See T.R.A.P. 4(a) ("[T]he notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from."). The failure to comply with Rule 4(a) is not jurisdictional and may be waived by this court in the interest of justice. Id. We choose to address the merit's of the petitioner's claim.

> Appointed or retained counsel shall be required to review the pro se petition, file an amended petition asserting other claims which petitioner arguably has or a written notice that no amended petition will be filed, interview relevant witnesses, including petitioner and prior counsel, and diligently investigate and present all reasonable claims.

Tenn. Sup. Ct. R. 28, § 6(C)(2). Counsel is also required to file a certification which affirms that he or she investigated possible constitutional violations, discussed any constitutional violations with the petitioner, and raised non-frivolous constitutional claims. Leslie, 36 S.W.3d at 38 (citing Tenn. Sup. Ct. R. 28, § 6(C)(3), app. C). In Leslie, the court made clear that counsel "retains the right to make strategic and tactical decisions–including the determination of which issues are reasonable and should be raised and pursued–based on counsel's professional judgment." Id.

Rule 28 does not expressly provide for a remedy if post-conviction counsel fails to comply with the requirements of the rule. Constitutionally speaking, a petitioner does not have a right to the effective assistance of counsel in post-conviction proceedings. See House, 911 S.W.2d at 712 ("There being no constitutional right to counsel in post-conviction proceedings, it follows that there is no constitutional right to effective assistance of counsel in post-conviction proceedings."). The requirements of procedural due process are met if the petitioner was afforded "the opportunity to be heard 'at a meaningful time and in a meaning manner.'" Id. at 711 (quoting Mathews v. Eldridge, 426 U.S. 319, 333, 96 S. Ct. 893, 902 (1976)); see also Richard L. Elliott v. State, No. M2004-00853-CCA-R3-PC, 2005 WL 1315753, at *2 (Tenn. Crim. App., at Nashville, June 3, 2005). This court has repeatedly denied claims for relief based on the ineffectiveness of post-conviction counsel. See, e.g., Randy Caldwell v. State, No. M2001-00334-CCA-R3-PC, 2002 WL 31730875, at *15 (Tenn. Crim. App., at Nashville, Dec. 4, 2002); Franklin Dan Rickman v. State, No. W1999-01781-CCA-R3-CD, 2000 WL 140457, at *5 (Tenn. Crim. App., at Jackson, Feb. 2, 2000); Jackie Milton Price v. State, No. 03C01-9309-CR-00295, 1994 WL 398807, at *4 (Tenn. Crim. App., at Knoxville, Aug. 3, 1994).

The petitioner claims he has a right to a new post-conviction hearing because counsel failed to litigate reasonable claims for relief included in the post-conviction petition. In support, he cites to this court's decision in Ronald Donnell Moore v. State, W1999-02125-CCA-R3PC, 2001 WL 792612 (Tenn. Crim. App., at Jackson, July 13, 2001), which granted a petitioner's request for a new post-conviction hearing. The petitioner was convicted of first degree murder. Id. at *1. Before trial, he informed his trial counsel of a possible defense based on intervening cause of death. Id. The petitioner alleged that two individuals had a physical altercation with the victim after the offense occurred. Id. Trial counsel never investigated this defense. Id. The petitioner filed a petition for post-conviction relief that listed the names of the two individuals involved in the altercation. Id.

At the start of the post-conviction hearing, post-conviction counsel claimed he had no knowledge of these witnesses until the morning of the hearing. Id. The post-conviction court gave the petitioner an opportunity to present the two witnesses at a later hearing. Id. at *2. The petitioner and the witnesses were not present at the later hearing, and the court denied the petition. Id. at *3. The petitioner claimed he came to the courtroom on the date of the hearing but was told that his case had been dismissed. Id. At the post-conviction hearing, the post-conviction counsel acknowledged that he had not contacted the two witnesses. Id. at *2. On appeal, this court awarded the petitioner a new post-conviction hearing. Id. at *5. It pointed out that the record contained no evidence that post-conviction counsel or trial counsel investigated the intervening cause of death defense. Id. The court then stated:

> We recognize that ineffective assistance of post-conviction counsel can provide no basis for relief. House, 911 S.W.2d at 712. Nevertheless, counsel should meet the requirements of Tenn. Sup. Ct. R. 28, § 6(C). In this case we need not determine whether the failure of counsel to comply with all the requirements of Rule 28 itself justifies the granting of a new hearing. The trial court dismissed the petition because the petitioner did not have the witnesses present at the second hearing. Petitioner did not have the opportunity to be heard prior to the dismissal as to whether this was his fault. In light of the entire record, we believe a remand for a new post-conviction hearing is the appropriate remedy.

Id.

The State argues that the decision in Ronald Donnell Moore does not support the petitioner's claim that he is entitled to a new post-conviction hearing based on a violation of Rule 28. It refers to the following passage from this court's decision in Hollis G. Williams v. State:

> The petitioner argues that Ronald Donnell Moore provides authority for a new post-conviction hearing upon a showing of a Rule 28 violation, but the court in Ronald Donnell Moore specifically noted that its decision did not rest solely on a Rule 28 violation. Although the Post-Conviction Act provides for appointed counsel and Rule 28 mandates certain obligations of counsel in a post-conviction case, it does not follow that an allegedly aggrieved petitioner is entitled to a new post-conviction hearing. In Richard L. Elliott v. State, No. M2004-00853-CCA-R3-PC, Montgomery County (Tenn. Crim. App. June 3, 2005), app. denied (Tenn. Dec. 5, 2005), the petitioner sought a new post-conviction hearing for Rule 28 shortcomings. We said, "We emphasize the importance of Rule 28 and post-conviction counsel's compliance with the

rule.  However, a Rule 28 violation does not afford the remedial right of a second or amended post-conviction hearing." <u>Richard L. Elliott</u>, slip op. at 3.

No. W2006-00779-CCA-MR3-PC, 2007 WL 1711717 (Tenn. Crim. App., at Jackson, June 13, 2007).

In viewing the record and applicable case law, the petitioner should not be granted a new post-conviction hearing.  The circumstances of <u>Ronald Donnell Moore</u> are clearly distinguishable and we found no other cases in which the petitioner was granted a new hearing based–at least in part–on counsel's non-compliance with Rule 28. It is not necessary to address whether a violation of Rule 28 could ever entitle a petitioner to a new hearing. Here, the petitioner presented no evidence that post-conviction counsel failed to meet the requirements of Rule 28.  First, he alleges that counsel should have elicited testimony about whether the photo spread, which was shown to the victim and Dean, was unduly suggestive. The petitioner claims the photo spread unfairly targeted him because he was the only individual with braided hair.  In viewing the photo spread, we find absolutely no basis for the claim that it was unduly suggestive.[4]  Furthermore, the photo spread did not have a significant effect on the outcome of the trial.  The victim, Dean, and Pulliam identified the petitioner as being present during the offense.  Their testimony certainly undermined any claim of misidentification.  The petitioner even acknowledged that he knew Dean and Pulliam before the offenses occurred.  The petitioner also alleges that post-conviction counsel failed to "cross-examine state witnesses regarding prior inconsistent statements." This claim is not supported by any additional argument, and therefore it is waived.  The petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

---

[4]We note that the photo lineup appears to show two individuals with braided hair.